## HILL *v*. THE STATE.

1. The evidence was sufficient to lay the foundation for the admission, as dying declarations, of the sayings of the man who was shot, and for the murder of whom the accused was on trial.
2. The testimony admitted over the objection that the accused was on trial for murder, and not for rape, was a part of the res gestæ. It tended to show motive on the part of the ravisher in committing the murder, and his identity; and being material and relevant for such purposes, it was admissible on the trial for murder, notwithstanding it related to the other offense of rape.
3. There was no merit in the objection to the testimony as to finding "beggar lice" on the underclothing of the accused, on the ground that it forced him to give evidence tending to criminate himself, in that he was led to believe that he would be harmed unless he assisted the officer, or 'if he offered any resistance.
4. The admission in evidence of the shoes testified to have been taken from the feet of the accused, over the objections presented, was not erroneous.
5. The newly discovered evidence was not merely impeaching and cumulative, but it set up new and material facts that would probably result in a different verdict on another trial. It was erroneous to refuse a new trial on the ground relating to this evidence.

No. 4626.    SEPTEMBER 29, 1925.

Murder. Before Judge Howard. Fulton superior court. October 25, 1924.

The grand jury in Bibb County indicted Robert Hill for the murder of J. W. Culpepper by shooting him with a pistol. There was a change of venue, and the case was transferred for trial to the superior court of Fulton County. A verdict was returned, finding the defendant guilty, with a recommendation to the mercy of the court; whereupon the defendant was sentenced to be confined at hard labor in the penitentiary of this State, or such other place as the Governor may direct, for the full term of his natural

life. The defendant's motion for a new trial was overruled, and he excepted.

*Earl W. Butler, Leon S. Tomlinson,* and *Brackett & Tindall,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, E. A. Stephens,* and *R. H. Pharr,* contra.

ATKINSON, J. 1. The evidence tended to show that the deceased was shot with a pistol about 10 or 11 o'clock Sunday night, the 30th of December; that the ball entered the right side of the neck and almost severed the spinal cord, paralyzing the body from the neck down; that the physician informed him the night he was wounded that he was very seriously injured; that he lingered and died on January 4th; that his father came from Brooks county to see him; that he told his father "he did not expect to live." The evidence was sufficient to lay the foundation for the admission, as dying declarations, of the following statements of the son to his father: "He said he was in a car with a young lady when he was shot, and the young lady was taken out of the car and carried off, and in about thirty minutes or forty minutes the negro came back and robbed him of ten dollars and his overcoat." "My son said, when he was shot some one walked right around the car, and this girl screamed and said, 'You shot him. You killed him;' and he said, 'Yes, and I will kill you if you don't get out of there.'" *Young* v. *State,* 114 *Ga.* 849 (2) (40 S. E. 1000); *Anderson* v. *State,* 122 *Ga.* 161 (50 S. E. 46); *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106); *Jones* v. *State,* 130 *Ga.* 274 (2) (60 S. E. 840); *Jones* v. *State,* 150 *Ga.* 775 (105 S. E. 495); *Coart* v. *State,* 156 *Ga.* 536 (3) (119 S. E. 723).

2. A female witness testified: "He made me lie down, with the pistol, and had intercourse with me." This was admitted over the objection that the defendant was on trial for murder, and not for rape. Immediately preceding this testimony, the witness testified that she and Culpepper had gone riding in an automobile, and, having stopped on "the race-track," Culpepper was about to embrace her, at which time "the shot was fired and somebody came around the car, and I said, 'Oh, you have killed Culpepper,' and he said, 'I don't give a damn.' Then he said, 'Damn you, get out,' he held the pistol at my head, and told me if I didn't get out he

would blow my brains out; so I got out; it was a negro. He took my arm and drug me. kind of across the road. I asked him where he was taking me; he said, 'Never mind; come on,' or he would blow my brains out. He took me fifty or sixty yards from the car, outside the race-track; then he just told me what he wanted; he still had the pistol and a stick five or six feet long." The evidence objected to was a part of the res gestæ (*Floyd* v. *State,* 143 *Ga.* 286 (2), 84 S. E. 971), and tended to show motive upon the part of the ravisher in committing the murder, and identity of the person committing the murder; and being material and relevant for such purposes it was admissible on the trial of the murder case, notwithstanding it related to the other offense of rape. *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016) ; *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286) ; 8 R. C. L. 198, § 194; 16 C. J. 600, § 1165.

3. The fifth ground of the motion for new trial complains of the admission of the following questions and answers made during the examination of a deputy sheriff: "Q. Did you take his clothes off of him? A. No. Q. What did you do in the way of making an examination? A. Unfastened the front of his clothes. Q. Did you do that? A. I 'hoped' him. I think I unbuttoned the first button, and he the others. Q. Who took his clothes down? A. I did. Q. Mr. Stevens, he was under arrest at that time? A. Yes. Q. That was after you got him to Atlanta and had put him in the jail here? A. Yes. I had him at the jail. Q. What did you find on the surface, if anything, next to the skin, on the inner surface of his underclothing, his drawers? A. There was 'beggar lice.' " The evidence was objected to on the ground that it forced the defendant to give evidence tending to criminate himself, in that he was led to believe that he would be harmed unless he assisted the officer, or if he offered any resistance. There was no merit in this ground of the motion for new trial.

4. The sixth ground of the motion for new trial is: "Movant contends that the court erred in admitting in evidence the shoes alleged to have been taken from the feet of the defendant, on the ground that the said evidence was obtained illegally, in that defendant was forced to submit to the acts of the officers in giving his shoes to them after they had forcibly taken them from his feet while he was under arrest. Movant further contends that the court erred in admitting the said shoes in evidence, because it was never

shown that said shoes were the same shoes defendant had on at the time of the commission of the crime or at the time of his arrest. It is contended by movant that it has never been proven that the shoes exhibited to the jury and put in evidence were obtained from movant. Movant objected to the admission of said shoes in evidence, as above stated, which objection was overruled by the court. Movant then and there excepted, now excepts, and assigns the same as error requiring the grant of a new trial." The seventh ground of the motion for new trial complains that the admission in evidence of the shoes was illegal, "because the same was prohibited by law, under the evidence of" a witness who testified: "There isn't anything peculiar about the shoes to distinguish them from any other shoes of the same kind with the same wear and usage." This testimony was given on cross-examination. On the direct examination the witness had testified: "The first time I saw these shoes Robert [the defendant] had them on. I was present to-day when they were exhibited to Robert Hill in the detention department; asked if they were his; he said, 'Yes sir, them is mine,' and reached out for them. He said they were the shoes he had on when arrested. . . I took the shoes to the park in Macon and tried them in the tracks leading from the car across that field, and from the car back out there, and from there on to the levee. Both shoes fitted in the tracks perfectly. The half-soled places showed in some of the tracks, but not all." It was not erroneous to admit the evidence over the objections urged.

5. The other special grounds of the motion for new trial relate to newly discovered evidence. It appears by a comparison that the alleged newly discovered evidence was not merely impeaching and cumulative in character, but set up new and material facts that would probably result in a different verdict on another trial. In the circumstances of the case it was erroneous to refuse a new trial on the grounds relating to newly discovered evidence. See *Fellows* v. *State,* 114 *Ga.* 233 (39 S. E. 885).

6. As a new trial will be granted, it becomes unnecessary to rule upon the sufficiency of the evidence to support the verdict.

*Judgment reversed. All the Justices concur.*