## 61202. HOLLEY v. THE STATE.

BIRDSONG, Judge.

Ernie R. Holley was convicted of three violations of the Georgia Controlled Substances Act (possession of cocaine, more than 100 pounds of marijuana, and possession of methaqualone) as well as wilfully damaging government property. He was sentenced to serve three concurrent ten-year sentences for the drug violations, plus a five-year consecutive sentence for the damage to state property, and fined $10,000 pursuant to Code Ann. § 79A-811. He brings this appeal enumerating four asserted trial errors. *Held:*

1. The facts and circumstances giving rise to this criminal trial and appeal show the following. At about 3:00 a. m. on the morning of January 15, 1980, an officer on duty at an agricultural control station in the state of Florida just south of the Georgia line observed a van pass the station without making the necessary stop. The officer pursued the van and stopped it about three miles north of the station but still in the state of Florida. The officer identified the driver as the appellant Holley. Holley was asked to open the back panel doors of the van so that the officer could determine if there was any prohibited agricultural products being transported. Holley voluntarily opened the back doors. The officer at once observed a clear plastic bag in plain view containing what he believed to be marijuana and smelled a faint odor of marijuana. He informed Holley that he would have to remain at the scene until a nearby county deputy sheriff could be summoned. The inspector placed Holley under arrest for bypassing the agricultural station. While the agricultural inspector was reading Holley his Miranda rights, the deputy sheriff arrived. The deputy was shown the bag of marijuana. Before anything further could be done,

Holley suddenly seized the pistol belonging to the inspector, and using that weapon secured the weapon of the deputy. The inspector, using the diversion caused by a passing tractor-trailer, managed to escape to summon help. Holley also made his escape, taking the keys of the vehicles of both the deputy's and the inspector's vehicles.

A radio alert (BOLO—Be on Look Out) was made to Georgia authorities informing the Georgia authorities of the bypass of the agricultural station as well as the possession of marijuana and the seizure of the weapons of the two Florida officers. Shortly thereafter, a Georgia State Patrolman observed the van proceeding north on I-75 in Lowndes County. The vehicle was stopped and Holley once again emerged, disclaiming that he had done anything wrong in Florida. By a subterfuge, Holley reentered the van and drove off followed by a covey of police vehicles. A short distance up the highway Holley came to a roadblock and crashed into and through a police vehicle blocking passage. While the van managed to pass the blockade, it suffered a severely damaged radiator and ended up in a ditch in a cloud of steam. Using the steam as cover, Holley and a companion fled the van into some nearby woods. After several hours, Holley and his companion were apprehended. Found in a field was a gun and a brief case (which brief case Holley admitted was his property). The brief case contained another gun, as well as a quantity of cocaine and methaqualone. The van was impounded and a subsequent search of the van disclosed another quantity of methaqualone and 179 pounds of marijuana.

2. In his first enumeration of error, Holley argues that the stop by the Florida agricultural inspector was in violation of applicable Florida statutes in that a recreational vehicle is not required to make a stop at an agricultural inspection station. The argument continues that once the illegality of the initial stop is shown, all subsequent police actions suffer from the taint of that illegality. While we might disagree with the latter contention of continuing taint, we are not required to face that question, for we find the initial stop to be authorized.

It is not disputed that the agricultural inspector was vested with the authority momentarily to detain any vehicle which is required to stop at an inspection station and fails to do so and, where necessary, to arrest the occupants of such a vehicle. It also is clear that recreational vehicles are expressly excepted from the operation of the inspection law. However, the Florida inspector unequivocally testified that when he saw the van pass the inspection station, he believed the van to be a panel type vehicle which commonly is used to transport cargo, a vehicle required to stop for inspection. His testimony was unshaken that he did not become aware that the van

was a recreational vehicle until long after the incident when he saw the vehicle or pictures of the vehicle in daylight hours. His avowed purpose was to examine the interior of the van for illegal agricultural products and if he had not seen and smelled the marijuana, the van could have proceeded on its journey. There is no dispute that after the initial stop, Holley voluntarily opened the van and that the officer saw the bag of marijuana in plain view and smelled the odor of the prohibited substance.

Very apropos to this factual situation is this court's holding in the recent case of *State v. Misuraca,* 157 Ga. App. 361, wherein we held:

"Even though acts of peace officers in detaining and questioning a citizen are necessarily a curtailment of the citizen's right to go about his business unmolested (i. e., a seizure of the person); but more importantly because investigation and questioning are necessary elements of crime prevention and detection, the exigencies of the situation as they reasonably appear at the time to the officer involved must dictate the extent of intrusion into constitutionally protected areas. Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142) at p. 96. Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action, a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. *Brooks v. State,* 129 Ga. App. 109, 111 (198 SE2d 892).

"The reverse of the above is that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams, 407 U. S. 143, 145 (92 SC 1921, 32 LE2d 612); *Stiggers v. State,* 151 Ga. App. 546, 547 (1) (260 SE2d 413). Under the . . . physical observations available to him at the time of the stop, and considering his limited response and actions, we have no hesitance in concluding that the initial stop by . . . [the agricultural inspector] was not an abuse of state action and not in violation of any rights protected by the Fourth

Amendment. See *McKinney v. State,* 155 Ga. App. 930 (273 SE2d 888)."

We are satisfied from the evidence contained in this transcript that the agricultural inspector reasonably observed what appeared to him to be a violation of law sufficiently to warrant at least a momentary detention. What followed was clearly justified both in Florida and Georgia. *State v. Medders,* 153 Ga. App. 680, 681 (266 SE2d 331); *Yawn v. State,* 134 Ga. App. 77 (4) (213 SE2d 178); *Cunningham v. State,* 131 Ga. App. 133, 135-136 (205 SE2d 899). The admission of evidence of the Florida stop was not error.

3. In his second enumeration of error, Holley complains that the seizure and unpermitted search of his brief case also violated his rights to privacy. The facts do not support this contention. The facts reasonably support a conclusion that Holley and his companion ran from the van into the woods. No one saw this abandonment of the van nor did they see Holley carrying a brief case. A Lowndes County officer was called to the scene to assist in the search for the occupants of the van. This officer testified that just as he arrived he saw Holley and the other occupant of the van being brought out of the woods in cuffs. He was instructed by his superior to retrace the steps of Holley to see if any weapons or other evidence might be found. The officer testified at the suppression hearing that he saw a path that appeared to be made by persons walking through weeds and grass. He followed this beaten path to a location where it appeared that a person or persons had lain thereby pressing down the undergrowth. At that location, he found a gun. About ten feet removed from this location, the officer found a brown brief case in the bushes that appeared as if it could have been thrown from where the person or persons had lain. He assumed this brief case had been abandoned and opened it to see if it might have any connection with the incident under investigation. He observed in the brief case a pistol and several bags containing white pills and a white powder. The contents of these bags subsequently tested out as methaqualone and cocaine, respectively.

Though Holley contends that he was holding the brief case at the time of his apprehension and was ordered to drop it (and thus did not try to hide it), the physical facts do not support this contention. There are facts to support a conclusion by the trial court that Holley attempted to conceal the brief case and in fact had for all practical purposes abandoned it, even as he had the van. Holley argues that the acts of the police officers coerced him into discarding the brief case. This contention has been made in other cases and rejected. *Green v. State,* 127 Ga. App. 713 (194 SE2d 678). There is nothing unlawful in the appropriation by governmental agents of abandoned contraband property, which act in and of itself is not a search or seizure in a legal

sense. *Green v. State,* supra, pp. 714-715. The issue of abandonment of property is a factual issue to be resolved by the trier of fact, the trial court. His finding on a motion to suppress will not be disturbed if there is evidence to support his determination of abandonment. *Vines v. State,* 142 Ga. App. 616, 617 (237 SE2d 17). This enumeration is without merit.

4. In his third enumeration of error, Holley urges as error the admission into evidence of the circumstances surrounding the original stop in Florida. He argues that evidence of the taking of the guns, the aggravated assaults upon the two officers and subsequent flight had no relevance to the later stop by Georgia authorities and was offered by the state for the purpose of prejudicing his rights to a fair trial. We disagree.

The chronology of events was appropriate to explain the conduct of the Georgia officers. If there was no evidence other than that a van had passed an agricultural inspection station, there would have been no valid explanation of the force utilized in the original stop in Georgia. The evidence showed that the detaining officer approached the situation with great caution, remaining behind the open door of his patrol car for protection, chambering a round into his shotgun and demanding that Holley dismount and come to the rear of the van. There would be no valid reason for the hurried establishment of a road block. Nor would there have been any reason for an officer to search the woods and nearby field for any weapons. Lastly, the desperateness of the situation both for the officers and the appellant went directly to explain why the appellant fled his vehicle as well as why he might have been motivated to abandon a brief case which could implicate him deeper. Thus such evidence was admissible to show the chronology leading to the detention, arrest and search of appellant and his vehicle as well as to explain the conduct of the officers. See *Natson v. State,* 242 Ga. 618, 620 (250 SE2d 420); *Coleman v. State,* 127 Ga. 282 (1) (56 SE 417).

5. In his last enumeration of error, Holley argues that the fine of $10,000 imposed as a part of the punishment for the possession of more than 100 pounds of marijuana is excessive. With this contention we agree. Holley was apprehended with the 179 pounds of marijuana in January, 1980. Code Ann. § 79A-811, as of January, 1980, provided that possession of more than 100 but less than 1,000 pounds of marijuana permitted confinement of not less than three nor more than ten years and a fine of $5,000. Effective March 20, 1980, that punishment was modified by the General Assembly to provide that possession of more than 100 but less than 2,000 pounds was punishable by not less than five years and a fine of $25,000.

At the time of the offense here committed (January, 1980), the

maximum fine that could be imposed for possession of more than 100 but less than 1,000 pounds of marijuana was $5,000. Even though appellant was not convicted of possessing 179 pounds of marijuana until August, 1980, well after March 20, 1980 when possession of 179 pounds of marijuana authorized a fine of up to $25,000, any attempt to impose a greater punishment based upon an after-passed law, and the later enacted statute, if made applicable to the appellant, would of necessity be ex post facto law. Ex post facto laws are clearly prohibited. See Constitution of Georgia of 1976, Art. I, Sec. I, Par. VII (Code Ann. § 2-107; Code Ann. § 102-104); *Brinks v. State,* 232 Ga. 13, 15 (205 SE2d 247); *Akins v. State,* 231 Ga. 411, 412 (202 SE2d 62). See also *Butler v. State,* 239 Ga. 591 (1) (238 SE2d 387).

Inasmuch as the fine imposed is excessive, but the remainder of the findings of guilty and sentence of the court are without error, the findings and sentence of the court are affirmed provided that on remittitur the trial court reassesses any fine in accordance with the applicable provisions of Code Ann. § 79A-811, as of January, 1980, not to exceed a fine of $5,000; otherwise the sentence is reversed.

*Judgment affirmed and remitted with direction. Shulman, P. J., and Sognier, J., concur.*

DECIDED MARCH 11, 1981 —

*Clyde M. Taylor, Jr., Roger J. Dodd, Ronald A. Dion,* for appellant.

*H. Lamar Cole, District Attorney,* for appellee.