68738, 68739, 68740. THE STATE v. FORDHAM (three cases).
(324 SE2d 796)

POPE, Judge.

The defendant, Kelly Fordham, was charged in three separate indictments with a total of four counts of failure to pay for agricultural products, in violation of former Code Ann. § 5-9914. The offenses were alleged to have been committed in July and August of 1982. Although former Code Ann. § 5-9914 was in effect at that time, it was subsequently repealed by § 1-1-10 (a) (1) of the Official Code of Georgia Annotated, which took effect on November 1, 1982, and the offense was not included in the new Code as originally enacted. It was added to the new Code, however, during the following session of the General Assembly, by the enactment of OCGA § 16-9-58 (Ga. L. 1983, p. 485, § 2). The language of the two statutes is identical, although the new Code section is captioned "Failing to pay for natural products or chattels," whereas the former was entitled "Failing to pay for agricultural products and naval stores."

The indictments at issue were returned on October 19, 1983. The trial court subsequently dismissed the prosecutions based on the Supreme Court's holding in *Gunn v. State*, 227 Ga. 786 (4) (183 SE2d 389) (1971), to the effect that the repeal of a statute making certain described conduct a crime, without a saving provision, puts an end to any prosecution for the offense which has not reached final judgment. The State appeals. *Held:*

The record shows that Fordham was originally indicted for these offenses in November 1982, and that these indictments were subsequently "nol prossed." New indictments for the same acts were handed down after the new law (Ga. L. 1983, p. 485, § 2) became effective on July 1, 1983. *Gunn v. State*, supra, sets out the common law doctrine that where a criminal statute is repealed prior to a final judgment, and such repeal contains no saving clause, the repeal terminates the prosecution. Another recognized exception to this general rule, along with a saving clause, is where the legislature simultaneously repeals and re-enacts statutes dealing with the same conduct. Neither exception applies in the present case.

There is no question that the enactment of the new Code on November 1, 1982 repealed the provision in question. It was not included in the Code. OCGA § 1-1-10 (a) specifically repealed all general laws except those provided in the Code and some 93 exceptions set out in subsections (b) (1)-(15) and (c) (1)-(78) of OCGA § 1-1-10. The provision in question was not among these specific exceptions. Subsections (49), (50), (51) and (52) of subsection (c) specifically save from repeal certain laws dealing with the use of crops as mortgages. Subsections (15), (16), (17), (18) and (19) of subsection (c) all deal in some way with criminal procedure. Given the various laws specifically saved from repeal in OCGA § 1-1-10, it is unlikely that the absence of the provision in question was an inadvertent omission. This view is buttressed by examination of Ga. L. 1983, p. 3, which discloses that the purpose of this act is "[t]o amend the Official Code of Georgia Annotated, so as to correct typographical, stylistic, and other errors and omissions . . . ." If the provision in question were indeed an inadvertent omission, one would expect to find it enumerated among the 69 sections and 136 pages of this act. One does not. Instead, one finds the new OCGA § 16-9-58 enacted at Ga. L. 1983, p. 485, § 2. The language prefacing this act is illuminating. In pertinent part it reads: "to enact a *new* Code Section 16-9-58 relating to the crime of failure to pay for agricultural products, naval stores, or other chattels . . . ." (Emphasis supplied.) Further, Section 2 reads: "A *new* Code Section 16-9-58 is added at the end of Article 4 of Chapter 9 of Title 16 of the Official Code of Georgia Annotated, relating to forgery and fraudulent practices, said *new* Code section to read as follows . . . ." (Emphasis supplied.) Although this act was passed in March 1983, it did not become effective until July 1983. The language quoted above, plus the eight-month period between the repeal of the old provision on November 1, 1982 and the effective date of the new provision July 1, 1983, compels the conclusion that the original omission was not inadvertent. Rather, the later enactment of OCGA § 16-9-58 reflects a legislative change of mind. Under these circumstances, the holding in *Gunn v. State*, supra, controls this case, and the trial court correctly

dismissed the indictments.

*Judgments affirmed. Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Beasley, J., concurs specially. McMurray, C. J., Deen, P. J., and Banke, P. J., dissent.*

DECIDED DECEMBER 4, 1984.

*Michael T. Solis, Assistant District Attorney*, for appellant.
*Terry F. Holland, W. McMillan Walker*, for appellee.
*Mark Lee Stevens*, amicus curiae.

BEASLEY, Judge, concurring specially.

I agree with the majority but do not believe that *Gunn* provides the full answer because in the current case the repealed act was substantially re-adopted less than a year later.

The law, i.e., *Gunn* and the lack of a saving clause in the repealer, put an end to the first prosecution because the statute was repealed before final judgment.

The general rule would be that the new law (or re-enacted law, if perceived in that fashion) had prospective effect only. That is, it applied to acts committed only on or after the date of its effectiveness. OCGA § 1-3-5; *Winston v. State*, 186 Ga. 573, 574 (198 SE 667), disapproved on another ground in *Todd v. State*, 228 Ga. 746, 749 (187 SE2d 831). See *Hahn v. State*, 166 Ga. App. 71, 74 (303 SE2d 299); *Akins v. State*, 231 Ga. 411 (1) (202 SE2d 62). Otherwise there would be a lack of due process because the person committing the act would not have been forewarned that his contemplated act was a crime.

If the legislature intended a departure from this general rule, that this re-enactment was to cover acts within the statute of limitations retroactively except for the period when the repealer was in effect, it should have said so. It did not. What is more, it did not even provide that the statute be effective upon passage in March but simply allowed it to become effective at the generally effective time, in July. So the legislature took no pains to specify that the statute was to cover acts which had occurred before the repealer.

In my opinion, we cannot guess at what the legislature meant. Nor can we say what it likely intended or what it is unlikely to have intended. If the new statute was to correct an earlier inadvertent omission, an oversight, and if it was further intended to apply retroactively, nunc pro tunc as it were, the legislature should have said so, particularly since this would be out of the ordinary. The statutes passed should be clear enough so reasonable men do not differ about their meaning.

BANKE, Presiding Judge, dissenting.

The Supreme Court's holding in *Gunn v. State*, 227 Ga. 786, 787 (4) (183 SE2d 389) (1971), was based on the common law doctrine, set forth in 22 CJS, Criminal Law, § 27, that the repeal of a criminal statute without a saving provision or the simultaneous re-enactment of a substantially similar statute evidences a legislative intent to pardon offenses previously committed under the statute which have not yet been prosecuted to final judgment. Although former Code Ann. § 5-9914 was repealed without a saving provision when the Official Code of Georgia Annotated took effect, the circumstances of its repeal tend to indicate that the offense was omitted from the new Code inadvertently and thus without any legislative intent to pardon previously committed offenses.

In passing the new Code, the Legislature specifically declared its intention not to alter existing substantive law, as follows: "The enactment of this Code is intended as a recodification, revision, modernization, and reenactment of the general laws of the State of Georgia which are currently of force and is intended, where possible, to resolve conflicts which exist in the law and to repeal those laws which are obsolete as a result of the passage of time or other causes, which have been declared unconstitutional or invalid, or which have been superseded by the enactment of later laws. *Except as otherwise specifically provided by particular provisions of this Code, the enactment of this Code by the General Assembly is not intended to alter the substantive law in existence on the effective date of this Code.*" OCGA § 1-1-2. (Emphasis supplied.)

The repeal of former Code Ann. § 5-9914 occurred not as the result of any specific reference to that section in the new Code but pursuant to the general repeal of the entire 1933 Code, as amended, which necessarily accompanied the new Code's passage. See OCGA § 1-1-10 (a) (1 & 2). In view of the Legislature's express statement of intention not to change the substantive law "[e]xcept as otherwise specifically provided by particular provisions of [the new] Code," and its verbatim re-enactment of the language of former Code Ann. § 5-9914 at its next available opportunity after passage of the new Code, I am led inescapably to the conclusion that the Legislature never had any intention of deleting this offense from the criminal law. Consequently, I find no legislative intention to pardon offenses previously committed under the former code section and would order the indictments in this case reinstated.

I am authorized to state that Chief Judge McMurray and Presiding Judge Deen join in this dissent.