72265, 72266. ROBINSON v. THE STATE (two cases).
(348 SE2d 662)

BEASLEY, Judge.

In Case No. 72265, appellant appeals from the convictions of trafficking in cocaine (OCGA § 16-13-31 (a)) and possession of marijuana (OCGA §§ 16-13-30 (j); 16-13-2 (b)). In Case No. 72266, he appeals from the denial of his motion in arrest of the cocaine judgment.

1. Appellant was charged with trafficking in cocaine by an indictment filed May 9, 1985, charging that he knowingly possessed more than 28 grams of a mixture containing cocaine on February 23. He was convicted of that offense on July 19. The contention is that the statute on which the indictment was based was repealed prior to final judgment, ending the prosecution.

An application of the rules of statutory construction leads us to find no repeal of the statute prohibiting the act for which defendant was convicted.

OCGA § 16-13-31 (a), which defines and proscribes trafficking in cocaine, was amended by an Act which took effect on July 1, 1985. Ga. L. 1985, p. 552. See OCGA § 1-3-4. The Act was described by the legislature as "An Act To amend Code Section 16-13-31 of the Official Code of Georgia Annotated, relating to trafficking in cocaine, illegal drugs, or marijuana and penalties for violations, so as to provide for mandatory minimum penalties upon conviction for certain violations. . . ." A comparison of the before and after versions of Section 31 shows that the legislature did two things.

One, it omitted the language which embraced within this heavy quantity/heavy penalty section those 28 gram and over "mixtures" which contained some cocaine. It left them to the lower penalties prescribed for lesser amounts, i.e., "any controlled substance," in OCGA § 16-13-30. Thus, if the defendant's act involved a mixture of sugar, for example, and less than 28 grams of cocaine as it is statutorily defined in OCGA § 16-13-26, the defendant would be subject only to the lower penalties prescribed in Section 30. "Possession" of the controlled substance cocaine, which defendant was charged with, was in either event a crime, both before and after the 1985 amendment to

Section 31.

The second change was a substantial increase in the penalties, depending on the quantity of cocaine involved. While the legislature left the quantity pegs the same as the pre-amendment categories, the escalating mandatory penalties were nearly doubled, both in terms of imprisonment and fines. Thus, persons involved with 28 grams or more of the controlled substance are to be even more severely dealt with than before. As the crisis in cocaine climbs, the legislature spoke and announced that so does the cost of involvement for those with the higher quantities.

The Act, therefore, did not repeal the section describing the crime; at the end of the Act, it merely repealed the laws and parts of laws in conflict with the Act. In this connection, see *Jackson v. State*, 12 Ga. 1, 3 (1) (1852). Since the Act amended OCGA § 16-13-31, it can hardly be said to have repealed it. Nor did it extinguish as a crime the possession of a mixture containing cocaine, when the cocaine itself, in the mixture in any of its forms as described in OCGA § 16-13-26 (1) (D), weighed less than 28 grams. It merely relegated such possession to the lesser penalty statute prohibiting the possession of any controlled substance. OCGA § 16-13-30 (a).

A reading of the rest of the Act reveals that it was part of a comprehensive legislative effort to combat more effectively and stringently the influx of cocaine in this State, targeting this particular controlled substance for more concentrated treatment. In addition to the upgrading of OCGA § 16-13-31, it specifically amended the Code "so as to authorize a Special Cocaine Task Force to assist local law enforcement agencies in cocaine abuse and trafficking investigations and the apprehension of violators; to provide that the Special Cocaine Task Force shall install and publicize the number of a state-wide telephone in an effort to encourage citizens to report incidents of drug abuse and trafficking or any suspicious activity involving drug abuse and trafficking; . . . to authorize a mobile cocaine education van . . . available free of charge . . . to teach youths and adults about the dangers of cocaine and other controlled substances. . . ." Ga. Laws 1985, p. 552.

In construing the statute, we as a court must try to ascertain the purpose and intent of the legislature and then try to construe the law to implement that intent. *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486 (322 SE2d 265) (1984). This is a cardinal rule of statutory construction. *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185 (317 SE2d 816) (1984). Reading the statute as changed by the legislature, in the context of the other related provisions of the chapter on controlled substances, we conclude that the omission of the "mixture" language signalled the abandonment of a phrase which permitted conviction under the higher-penalty provision for a small quantity of cocaine which was

part of a larger quantity of an uncontrolled substance. It reassigned the act of possessing this to the coverage of OCGA § 16-13-30, for its lower penalties.

We cannot ascribe to the word "mixture" the meaning presented by the dissent. We do not know whether the legislature chose it in 1980 because of the Webster's definition chosen by the dissent or even whether it considered it in opposition to the word "compound." As the state's forensic science expert testified, compounds are mixtures of different substances. There are several different meanings of the word "compound," she said, and a mixture can be a compound. The omission of the phrase thus left within the coverage of this section "cocaine" in the many forms describing this Schedule II controlled substance in OCGA § 16-13-26 (1) (B). In one of these forms it could also be incorporated into a "mixture" in the sense that it was diluted with some uncontrolled substance such as sugar.

The cocaine having come within that statutory definition according to the testimony of the state's witness, and the evidence having supported the charge that defendant was in possession of it, the conviction stands. The indictment charges that defendant did "unlawfully and knowingly actually possess more than 28 grams of a mixture containing cocaine, as described in Schedule II and in violation of the Georgia Controlled Substances Act, contrary to the laws of said State." The actual act or conduct he was charged with, and that the jury found him guilty of, and which is supported by the evidence, is the possession of "more than 28 grams of a mixture containing cocaine." Both before and after the amendment effective July 1, the possession of *any* amount of cocaine was prohibited.

The above analysis is necessary in order to deal with a fairly recent apparent judicial exception to the general law of Georgia which has governed us for at least the last 150 years. The Penal Code of 1833, Sec. 34, provided: "All crimes and offences committed shall be prosecuted and punished under the laws in force at the time of the commission of such crime or offence, notwithstanding the repeal of such laws before such trial takes place." This continued in Cobb's Digest of 1851 (Penal Laws par. 327, p. 838), the Code of 1863 (§ 4550, p. 890), and so forth up to the 1895 Penal Code § 18, which simply streamlined the language to read: "All crimes shall be prosecuted and punished under the laws in force at the time of the commission thereof, notwithstanding the repeal of such laws before such trial takes place." This newer language was carried forward through the 1933 Code § 26-103.

The courts applied the law according to its terms, recognizing the date of the *offense* as determinative of what law controlled, that being the law on the date of the offense. *Jordan v. State*, 38 Ga. 585, 586 (1) (1869), *Patton v. State*, 80 Ga. 714 (6 SE 273) (1888), and *Barton v.*

*State,* 81 Ga. App. 810, 813 (3) (60 SE2d 173) (1950) are illustrative.

In 1968 the Criminal Code was overhauled and the legislature chose a single date for its uniform effectiveness, so that all crimes committed on or after that date would be governed by it, and any crimes committed beforehand would be governed by "the law existing at the time of the commission thereof. . . ." Ga. L. 1968, p. 1249, § 1. In its concern with adequately covering these two situations, i.e., crimes committed before the effective date and not yet prosecuted and crimes committed after the effective date, the legislature neglected to provide expressly for those future situations where portions of the substantive criminal statutes were changed by future legislatures.

That is to say, new Section 26-103 focused directly only on past unprosecuted crimes and crimes committed while it, unamended, was in effect. *Ponder v. State,* 121 Ga. App. 788, 789 (175 SE2d 55) (1970) shows the application of this continued principle that the commission of the crime was the governing date. The revised statute expressly provided for *Ponder* because the offense was committed prior to the effective date of the new Criminal Code.

The opportunity to address the situation left vacant by the legislature came in 1971, in *Price v. State,* 124 Ga. App. 850 (1) (186 SE2d 360) (1971). There a 1970 change in the law relating to marijuana was urged by defendant to extricate him from the conviction. The court had no trouble holding that the law in effect at the time of the commission of the crime governed. It cited several date-of-commission cases as well as "old Code § 26-103 and new Code Ann. § 26-103 (Criminal Code of Georgia, Ga. L. 1968, pp. 1249, 1260)."[1]

The policy of dealing with a criminal offense according to the law in effect when it was *committed,* instead of departing from this long-established tradition and adopting an unreasoned and happenstance sort of date such as the date of indictment or date of trial, has been followed *after* the 1968 overhaul, in *Papp v. State,* 129 Ga. App. 718 (201 SE2d 157) (1973); *Holley v. State,* 157 Ga. App. 863, 867 (5) (278 SE2d 738) (1981); *Hahn v. State,* 166 Ga. App. 71 (303 SE2d 299) (1983) (the latter two for constitutional *ex post facto* reasons); and *Dunn v. State,* 178 Ga. App. 6 (1) (341 SE2d 880) (1986) (based in part on OCGA § 1-3-5). Thus the vacancy left by the legislature has been judicially filled by retaining the long-lived principle.

This brings us to the two cases cited in the dissenting opinion and to the reason for the analysis undertaken prior to addressing the history of OCGA § 16-1-9 (Code § 26-103). Although not necessary to

---

[1] The fact that the drug statute was not then part of the Criminal Code as it is now, was of no significance even though Section 26-103 referred to "This Title."

the decision in *Gunn v. State*, 227 Ga. 786 (183 SE2d 389) (1971), the Court recited that "While it is well settled that where a statute making described conduct a crime is repealed prior to a final judgment on a conviction, the repeal puts an end to the prosecution, yet where the statute effecting such repeal contains a saving clause the repeal does not affect pending prosecutions." Id. at 787 (4). The only authority given for the proposition was 22 CJS 88, Criminal Law, § 27. That section, however, states that a general statute, as well as a saving clause, would save the proceeding. The Court in *Gunn* actually recognized this exception by immediately thereafter reciting the Criminal Code of Georgia § 26-103, the general statute. The Court could not tell from the record what the actual *date* of the offense was which would be in the evidence and not necessarily the date recited in the indictment. The court reasoned that since the date of the offense could have been before the effective date of the new Criminal Code of Georgia, the conviction would stand even if the statute making the conduct a crime was *repealed* before the trial. Consequently, the overruling of the motion in arrest of judgment was affirmed.

Later, Gunn filed a petition for habeas corpus, showing that the acts were committed on November 22, 1969 and claiming that his sentence was illegal "because the crime had been abolished prior to the date of the alleged crime." *Gunn v. Balkcom*, 228 Ga. 802 (188 SE2d 500) (1972). The Supreme Court agreed, finding that "[t]here was . . . no valid law defining the crime of foeticide at the time the appellant *committed the acts* for which he was convicted of the crime of foeticide." Id. at 804. (Emphasis supplied.)

It appears, then, that the two *Gunn* decisions are in complete harmony with the principle which has been the law in Georgia for well over a century. In them, again, the gap left by the 1968 statute was filled by the Supreme Court's continuing the application of the principle, giving efficacy to the law which a criminal actor was charged with knowing when he committed the act and which existed to forewarn him that his intended behavior was prohibited.

In *State v. Fordham*, 172 Ga. App. 853 (324 SE2d 796) (1984), OCGA § 16-1-9 and its history were ignored and the statement made in *Gunn* was taken out of context and relied upon. It thus seems to have created an exception to the date-of-commission as controlling, for those situations where the legislature says, after the act is committed but before it is prosecuted, "this State no longer considers such conduct to be criminal" and changes the public policy in this regard.

Even if the exception is recognized as such, it does not apply here. As set out above, the statute making the possession of cocaine a crime was not repealed in Georgia by the 1985 Act, which merely amended the trafficking statute and did not change the possession statute. The conduct is still prohibited. All that was altered was the

punishment imposable for it and the appellation given to it when certain quantities were possessed.

Going one step farther, even if the 1985 Act were considered as having "repealed" the prior law, *State v. Fordham*, supra at 854 responds: "Another recognized exception to this general rule, along with a saving clause, is where the legislature simultaneously repeals and reenacts statutes dealing with the same conduct." See also 73 AmJur2d 509, Statutes, § 391.

We therefore apply the principle that the law in force at the time the act was committed controls. That is what was followed below, and thus defendant cannot enjoy the "perfect jubilee" mentioned in *Jackson v. State*, supra at 4.

2. The next claim is that evidence seized in a search of appellant's office-home should have been suppressed because the search warrant was invalid.

A. It is asserted that the information on which the warrant application was based was stale. The record shows that the officer who sought the warrant was told within three days of February 22, 1985, the day the warrant was issued, that appellant was planning a cocaine party at his office-home on the evening of February 21, and that the officer had received a sample of cocaine obtained from appellant on February 21. The officer was told by another officer that an informant had seen cocaine possessed and stored at appellant's office-home within three days of February 22.

"Time is assuredly an element of the concept of probable cause. [Cit.] However, the precise date of an occurrence is not essential. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant. [Cit.]" *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984).

Given the information that cocaine was being stored on appellant's premises and that a sample of cocaine had been procured from appellant's premises the day before the warrant was issued, it was reasonable to believe that there was still cocaine at appellant's office-home when the warrant was issued.

B. Appellant's second attack on the warrant concerns the reliability of the informants who supplied information used in the affidavit. It recited that the affiant had known an informant, Source A, for two years, that the informant had shown a truthful demeanor, that information from the informant had resulted in two seizures of cocaine, and that the informant's prior identification of drug dealers and their residences had been corroborated by other investigative sources. Source A reported having heard appellant boasting that there was to be a cocaine party at his office-home. A second informant,

Source B, related to an officer named in the affidavit that he had personally observed cocaine being stored and possessed in appellant's office. That officer told the affiant that he had known Source B for 15 years and that information from Source B had resulted in numerous arrests and convictions.

Applying *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983) and *Mize v. State*, 173 Ga. App. 327, 328 (326 SE2d 782) (1985), we find no error.

C. Citing *Nichols v. State*, 17 Ga. App. 593 (87 SE 817) (1916), appellant contends that the search warrant was invalid because the "application, affidavit and search warrant [were] prepared and presented to the magistrate" by the district attorney who subsequently disqualified himself from the prosecution. *Nichols* involved a prosecuting attorney who presented to the grand jury a perjury case against a person who had given testimony adverse to a plaintiff represented in a civil case by the prosecuting attorney. The prosecutor was held to be disqualified for pecuniary interest and the indictment was ruled invalid.

No such interest on the part of the district attorney appears in the record of this case. In fact, the record is silent concerning the reason for the disqualification. We note also that appellant's characterization of the district attorney's participation in the procurement of the search warrant is not borne out by the record. The portion cited by appellant shows only that the district attorney was one of the persons involved in the preparation of the warrant. There is no indication that he was involved in the application or affidavit for the warrant. The affiant's testimony was that only he and one or two other police officers were present when the application was presented to the magistrate. We find no irregularity in the manner in which the warrant was procured.

D. Appellant's contention that the search warrant is invalid because it was labeled "Superior Court of Hall County, Georgia," but was signed by a magistrate, is controlled adversely to appellant by *Birge v. State*, 143 Ga. App. 632 (1a) (239 SE2d 395) (1977): the erroneous heading was a mere "technical irregularity not affecting the substantial rights of the accused."

E. Appellant's claim that the search of his car was illegal because the portion of the warrant intended for a description of vehicles to be searched was marked "N/A" (not applicable) is without merit. The vehicle searched was within the curtilage of the house to be searched and was, therefore, subject to search. *Bellamy v. State*, 134 Ga. App. 340 (2) (214 SE2d 383) (1975).

F. Appellant's final ground of attack on the search warrant is that the applying officer's testimony before the magistrate cannot be considered if it was not transcribed when it was presented to the mag-

istrate. No supporting authority is cited and we have found none. The officer testified at the motion hearing and was extensively cross-examined by defense counsel.

3. Pursuant to a search warrant, samples of blood and urine were taken from appellant to determine whether cocaine was present in his system. He asserts that the taking of those samples violated his right against self-incrimination under the Georgia Constitution.

It has long been recognized that the protection against self-incrimination provided by the Constitution and laws of the state is more extensive than that granted by the Constitution of the United States. "While the language in the United States Constitution has long been construed to be limited to 'testimony,' the Georgia Constitution has been construed to limit the State from forcing the individual to present *evidence*, oral or real." *Creamer v. State*, 229 Ga. 511, 516 (192 SE2d 350) (1972). The court made it clear in *Creamer* that what is forbidden is to force the "doing of an act" against a defendant's will to incriminate himself. Under that rule, it has been held that compelling a defendant to place his foot in a track (*Day v. State*, 63 Ga. 668 (2) (1879)), or forcing a defendant to drive a truck onto scales (*Aldrich v. State*, 220 Ga. 132 (137 SE2d 463) (1964)), falls within the constitutional proscription. More recently, it was held that a defendant cannot be forced to produce a handwriting exemplar to be used in evidence against him. *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979). In each of those cases, the defendant was forced to do an act.

Contrasting with those cases are those in which evidence has been "taken from" a defendant: "beggar lice" from a defendant's underclothes, *Hill v. State*, 161 Ga. 188 (3) (129 SE 647) (1925); shoes taken from an accused while under arrest and compared with shoe prints, *Johns v. State*, 180 Ga. 187 (9) (178 SE 707) (1935); forcing an accused to appear in a line-up, *Meriwether v. State*, 63 Ga. App. 667 (2) (11 SE2d 816) (1940); taking blood (a minor intrusion which does not cause a defendant to be a witness against himself), *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973); taking a hair sample, *Smith v. State*, 148 Ga. App. 1 (4) (251 SE2d 13) (1978); fingerprinting a defendant, *Weaver v. State*, 161 Ga. App. 421 (2) (288 SE2d 687) (1982); requiring a suspect to give a voice exemplar for identification, *Jenkins v. State*, 167 Ga. App. 840 (1) (308 SE2d 14) (1983); and most recently, taking an impression of a defendant's teeth, *State v. Thornton*, 253 Ga. 524 (1) (322 SE2d 711) (1984).

We find no significant difference between those cases in which a "defendant is forced to submit his body for the purpose of having the evidence removed" (*Creamer*, supra, at 518), and the present case. There is nothing in the record to show that appellant was "forced" to produce a urine sample. We hold that the procurement of substances

which are naturally produced by the body does not violate a defendant's right against self-incrimination under the Constitution of Georgia. The motion to suppress this evidence was correctly denied.

4. The trial court's denial of appellant's motion to reveal the identity of the informant whose information was used in securing the search warrant leading to seized contraband is enumerated as error, but we find none.

Testimony at trial and at the suppression hearing established that the informant provided information and a sample of cocaine allegedly procured from appellant, but was not present when the search was conducted. Under those circumstances, the informant was a mere tipster whose identity was privileged. *Freeman v. State*, 172 Ga. App. 168 (2) (322 SE2d 289) (1984).

5. During the district attorney's opening statement, he referred to investigations of appellant's involvement in the distribution of cocaine. Appellant enumerates as error the denial of his motion for mistrial based on those remarks.

The record shows that appellant made no objection or motion for mistrial at the time the remarks were made. In fact, defense counsel made his opening statement after the district attorney's, and court was recessed until the next morning. It was then that appellant's motion for mistrial was made. A motion for mistrial not made contemporaneously with the alleged misconduct is not timely. *Bennett v. State*, 165 Ga. App. 600 (3) (302 SE2d 367) (1983); *Keri v. State*, 179 Ga. App. 664 (6) (347 SE2d 236) (1986).

6. An inculpatory statement appellant made to the police while they were executing the search warrant was admitted at trial over appellant's objection. The statement, an admission of his knowledge of the whereabouts of the contraband, followed a police officer's remark that, in executing the warrant, they could "take this place apart piece by piece," but that the easy way would be for appellant to tell them where the cocaine was. Appellant contends that the statement was inadmissible because it was induced by a threat in violation of OCGA § 24-3-50. To the contrary, the officer's remark was " 'a truism,' 'a recounting of the facts,' and did not constitute a fear of injury within the meaning of [OCGA § 24-3-50]." *Copeland v. State*, 162 Ga. App. 398 (3) (291 SE2d 560) (1982).

7. Appellant has enumerated as error the trial court's refusal to charge the jury that if the evidence presents two theories, one of guilt and one consistent with innocence, the law requires the acceptance of the theory that is consistent with innocence.

" 'The requested charge . . . has been criticized from the date it was written . . . and [has been] relegated to a role in cases "dependent solely upon circumstantial evidence." ' [Cits.]" *Lang v. State*, 171 Ga. App. 368 (3) (320 SE2d 185) (1984). In view of the direct

evidence of appellant's possession of the drugs seized from his office-home, there was no error in refusing to give the requested charge.

8. Next is appellant's complaint that the trial court erred in refusing to permit him to call the district attorney as a witness and in denying his motion for mistrial on the ground of prosecutorial misconduct.

The state called a witness who testified that he had purchased an ounce of cocaine for appellant. When defense counsel attempted to question the witness regarding the cocaine source, the district attorney made an unsuccessful attempt to block the line of questioning, stating in his place that an ongoing investigation would be interrupted by disclosure of the information appellant sought. After the trial court overruled the state's objection, the questioning continued, but the witness claimed he could not remember where or from whom he had purchased the cocaine. Appellant then attempted to call the district attorney to the stand and, when that was disallowed, moved for a mistrial on the ground that the state was knowingly using perjured testimony.

The object of the attempted questioning of the district attorney appeared to be the witness' credibility. Whether the district attorney knew the identity of the source would not be material to that issue. The district attorney was not a witness in the case and the court properly refused to "interrupt the orderly sequence of [the] trial to conduct a tangential investigation."

The record does not support appellant's argument as to the use of perjured testimony. The witness insisted that he did not recall the information appellant sought, and there is nothing in the record establishing otherwise. Compare *Kitchens v. State*, 160 Ga. App. 492 (1) (287 SE2d 316) (1981).

9. For final consideration is the double jeopardy contention that defendant was acquitted by the jury of trafficking when it first delivered the verdict form to the court through the clerk. The court had prepared a verdict form spelling out the various options. The jury, after deliberating for awhile and then receiving further instructions in response to its request to the court for clarification of possession and "anything pertaining to acquisition," resumed deliberations. It then reported that it had reached a verdict. The written form was reviewed by the court, which recognized an internal inconsistency in it.

The court asked whether the intention of the jury was to mark through one of the words on the form. What the court observed was that the "guilty of trafficking . . ." option had been circled and x's had been placed in front of the "guilty of possession . . ." and "not guilty" options. Before any reply was made, the court reinstructed the jury on the elements of trafficking in cocaine and of possession of cocaine and noted that the form verdict was possibly confusing and

asked the jury to indicate its true intent among the three possible verdicts related to the cocaine count. The foreman acknowledged understanding the directions, the jury resumed its work in the jury room, and less than fifteen minutes later the verdict, guilty of trafficking, was returned and published and directed to be recorded.

Defendant claims that the first form returned constituted the verdict so that the second verdict was a result of placing him in jeopardy twice, contrary to both the federal and state constitutions.

We find no such violations. The first document contained an inherent internal inconsistency. It was ambiguous. The court, mindful of the necessity that the form convey the true intention of the jury, that the communication be understood accurately and not contain ambiguity, simply instructed the jury to clarify its position. That is what it did. The court committed no error in recommitting the verdict improper in form to the jury. *Cofield v. State*, 247 Ga. 98, 113 (274 SE2d 530) (1981). See also *Dunn v. State*, 141 Ga. App. 853 (2) (234 SE2d 687) (1977); *Savage v. State*, 165 Ga. App. 121 (2) (299 SE2d 177) (1983). The verdict had to clearly answer the question, "What was the true intention of the jury here?" *Cross v. State*, 124 Ga. App. 152, 153 (2) (183 SE2d 93) (1971). Otherwise the process is incomplete.

There was only one complete and proper verdict, and no unconstitutional double jeopardy arose.

10. The remaining enumerations of error in these two cases lack merit.

*Judgments affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley and Pope, JJ., concur. Sognier, J., concurs in the judgment only. Benham, J., dissents.*

BENHAM, Judge, dissenting.

1. Because I believe that the principles enunciated in *Gunn v. State*, 227 Ga. 786 (4) (183 SE2d 389) (1971), and *State v. Fordham*, 172 Ga. App. 853 (324 SE2d 796) (1984), require the conclusion that, due to the legislature's changes in OCGA § 16-13-31 after appellant's indictment, the prosecution for trafficking in cocaine was at an end before trial, I cannot concur with the majority's affirmance of that conviction.

Appellant was charged with trafficking in cocaine by an indictment filed May 9, 1985. He was convicted of that offense on July 19, 1985. The indictment alleged that appellant knowingly possessed more than 28 grams of a mixture containing cocaine. Appellant contends on appeal that the statute on which the indictment was based was repealed prior to final judgment of conviction and that the prosecution was then at an end. I agree.

OCGA § 16-13-31 (a), which defines and proscribes trafficking in

cocaine, was amended by an Act which took effect on July 1, 1985. Ga. L. 1985, p. 552. See OCGA § 1-3-4. That Act struck in its entirety the existing subsection (a) which forbade knowing "possession of 28 grams or more of cocaine or of any mixture containing cocaine." In its place, the legislature enacted a subsection which omitted the phrase "or of any mixture containing cocaine" from the definition of the offense and from the three subparagraphs establishing penalties for violation of the subsection. Since appellant's indictment was clearly based on the repealed statute and since the legislature did not enact a savings clause which would have preserved any prosecution for violations occurring prior to the repeal, the trial court erred in entering judgment against appellant for trafficking in cocaine. *Gunn v. State*, supra; *State v. Fordham*, supra.

The State argues that the legislative change in the statute merely removed superfluous language since the description of cocaine in OCGA § 16-13-31 (1) (D) includes any "compound" of cocaine. The State's position, that "compound" is equivalent to "mixture," is unpersuasive. The statute refers to "any salt, compound, derivative, stereoisomers of cocaine, or preparation of coca leaves, and any salt, compound, derivative, stereoisomers of cocaine, or preparation thereof which is chemically equivalent or identical with any of these substances. . . ." The word "compound" is defined in Webster's New Intl. Dictionary (1981) as "a chemically distinct substance formed by union of two or more ingredients in definite proportion by weight and with definite structural arrangement." It is clear from the context of the statute that "compound," as well as "salt," "derivative," and "stereoisomer," are used to denote substances produced by a chemical reaction. A "mixture," on the other hand, is defined by that same source in such a way as to clearly remove it from the context of chemical reaction: "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence — usually distinguished from *complex* and *compound* . . ." I find it apparent, therefore, that what is proscribed by OCGA § 16-13-31 (a), insofar as a possession offense is concerned, is the knowing possession of 28 grams or more of a substance which is *chemically* identical to, equivalent to, or derived from cocaine; not 28 grams or more of a mixture which contains less than 28 grams of actual cocaine. The change in the statute was substantive and the principle announced in *Gunn* and followed in *Fordham* requires the reversal of appellant's conviction for trafficking in cocaine.

The majority seems to rely upon three premises on this issue: the statute under which appellant was prosecuted and convicted was not repealed; even if it had been, *Gunn* and *Fordham* are not good law; and, besides, possession of any amount of cocaine is illegal.

As to the first premise, I note that the Act amending OCGA § 16-3-31 recited that it did so "by striking subsection (a) of said Code section in its entirety and substituting in lieu thereof a new subsection (a). . . ." The old subsection defined the offense of trafficking in cocaine as certain acts involving cocaine "or any mixture containing cocaine. . . ." The new subsection (a) omitted the language "or any mixture containing cocaine." It is my opinion, therefore, that the Act repealed the statutory provision defining the offense of trafficking in cocaine and enacted a new definition which excluded appellant's conduct from the definition of that offense.

The majority's second premise, that *Gunn* and *Fordham* are incorrect, is also unacceptable to me. The statement the majority quotes from *Gunn*, which was relied upon in *Fordham*, while not the ultimate rationale for the Supreme Court's decision, was part of an explication of legal principles leading to the decision. I cannot agree, therefore, that the statement in *Gunn* is mere dicta and not binding on this court. Accordingly, I believe that *Fordham* was correct and that those two cases require reversal of appellant's conviction for trafficking in cocaine.

Finally, the majority repeats several times the truism that the possession of cocaine was illegal before and after the Act which repealed OCGA § 16-3-31 (a) and that the conduct for which appellant was prosecuted and convicted was the possession of cocaine. The record, however, shows that appellant was not charged with possession of cocaine, he was not convicted for possession of cocaine, and he was not sentenced for possession of cocaine. Appellant was indicted for trafficking in cocaine and the indictment tracked the language of the trafficking statute, the very language the legislature removed from the statute prior to appellant's trial, language which contains elements not present in the possession statute. The evidence at trial was directed at proving the elements of trafficking in cocaine, not simple possession. The verdict form sent to the jury permitted that body to convict appellant of trafficking in cocaine or possession of cocaine; the jury (after re-instruction) chose trafficking. Finally, appellant was sentenced for trafficking in cocaine, including the imposition of a fine for which there is no provision in the statute which the majority holds to make appellant's conduct unlawful, regardless of the state of the trafficking statute.

In sum, I remain of the opinion that the prosecution for trafficking in cocaine which led to this appeal was terminated when the legislature changed the definition of the crime of which appellant was accused and neglected to preserve ongoing prosecutions by means of a savings clause.

2. In the ninth division of the majority opinion, it is held that there was no error in returning to the jury the first verdict it had

returned. I cannot agree with that holding.

"Where a jury agree on their verdict, write it out, have it signed by their foreman, and deliver it to the clerk, by the direction and in the presence of the judge, it is 'published.' [Cit.]" *Bell v. State,* 163 Ga. App. 672, 674 (295 SE2d 147) (1982). In the present case, the jury announced that it had reached a verdict and, by the court's direction and in its presence, delivered the verdict to the clerk. Under *Bell,* the verdict was, at that time, published. In *Maltbie v. State,* 139 Ga. App. 342 (2) (228 SE2d 368) (1976), a cruelty to children case, the jury returned a verdict which found the defendant guilty "without intent." This court held that "[t]he original verdict of the jury amounted to an acquittal. There could be no finding of guilt without intent in this case." Id. at 345. In the present case, the jury deleted from the verdict form, in the option for finding appellant guilty of trafficking in cocaine, the word "knowingly." I find those circumstances to bring this case directly within the ruling in *Maltbie*: "It follows that once the jury reached its verdict in this case, and the same was presented to an officer of the court and the court, the trial had ended. The trial court was without authority to return the jury to its room for any further action." Id.

Although I cannot condone appellant's conduct, and the evidence makes it clear that that conduct included possession of cocaine, I cannot overlook the clear dictates of the law. It is apparent from the record that the jury returned a verdict equivalent to an acquittal of the trafficking charge and that the trial court received that verdict. As in *Maltbie,* this court's duty is to reverse appellant's conviction and return the case to the trial court with direction to enter a judgment of "not guilty" as to the charge of trafficking in cocaine.

For the reasons expressed above, I must respectfully dissent.

DECIDED JULY 16, 1986 —
REHEARING DENIED JULY 30, 1986 ▮

*Robert E. Andrews,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, James T. Martin, Assistant District Attorneys,* for appellee.