28130. STRONG v. THE STATE.

PER CURIAM. The appellant was convicted of murder in the Superior Court of Bibb County and sentenced to life imprisonment in the State Penitentiary. The appeal from this conviction and sentence presents for decision whether the trial court erred in admitting into evidence against appellant over his objection the results of a blood test using blood taken from the defendant without his consent while he was unconscious.

The essential facts may be stated as follows: On July 8, 1972, appellant and three companions were driving from Gray,

Georgia, to Macon, Georgia, in an automobile owned by one of the occupants but driven by appellant. As they proceeded southerly out of Gray, their automobile attracted the attention of Officer Robert Lowery, of the Gray Police Department, when he observed their automobile twice weave across the center line of the two-lane roadway. Officer Lowery pursued the vehicle driven by appellant and it came to a stop. Chief Jackson, of the Gray Police Department, observed Officer Lowery stopping the vehicle and drove over to assist him. As both officers got out of their patrol cars to approach the vehicle driven by appellant, it "took off" and a chase ensued at speeds in excess of 100 miles per hour in a southerly direction toward Macon. As the automobile driven by appellant approached Macon, it ran two cars off the road and proceeded into the city limits of Macon. Appellant continued to drive through a road construction area near Walnut Creek at high speed and hit one automobile traveling in the same direction and then hit another automobile in the rear before coming finally to rest against some steel beams stacked along the edge of the roadway. Susan Long, a passenger in one of the vehicles struck in the rear by the automobile driven by appellant, died of of injuries she received from the collision. Appellant was found by Gray Police Chief Jackson several hundred feet away from his vehicle at the foot of an embankment near Walnut Creek. The odor of alcohol on appellant was very strong and he was unsteady on his feet. Chief Jackson found in the wrecked automobile which had been driven by appellant an empty beer can and an empty wine bottle. Chief Jackson took custody of appellant and turned him over to Officer Lowery who placed handcuffs on him and then helped appellant to the police wagon of the Macon Police Department. The Macon police had been alerted by the Gray officers and upon their arrival, Lt. Hunnicutt, of that police department, took charge of the investigation. He ascertained the circumstances of the accident from the Gray officers and also detected the odor of alcohol in the vehicle which had been driven by appellant. After surveying the accident scene and learning appellant had been driving the vehicle which struck the other vehicles in the rear, Lt. Hunnicutt proceeded to the hospital where appellant had been taken. Appellant was unconscious and Lt. Hunnicutt was unable to rouse him. He detected the odor of alcohol on the unconscious appellant's breath and decided to order the withdrawal of a blood sample from appellant by a medical technician at the hospital.

The blood sample was transmitted to the State Crime Laboratory and found upon analysis to consist of .20 percent alcohol. Testimony at the trial by passengers in the vehicle driven by appellant also revealed that appellant had been drinking earlier in the afternoon and evening prior to the chase and that appellant definitely was the driver of the vehicle which struck the automobile in which the deceased Susan Long had been a passenger.

Appellant contends that the taking of his blood and admission into evidence at the trial of the results of the test analyzing the alcohol content of his blood violated the Constitutions of the United States and of the State of Georgia. In addition to the constitutional questions presented by appellant, the contention is also made that there is no statutory authority in Georgia for the taking of the blood of an unconscious person and using the results of a test analyzing the blood as evidence against him in a criminal case. Appellant cites Code Ann. § 68-1625.1 (the implied consent statute) and observes that its provisions apply only to a conscious person who is entitled thereunder to make a choice to submit either to a blood test or a breath test to determine the extent of intoxication, if any. Appellant argues that, as he was unconscious and not given a choice, the test using blood taken from him without his consent cannot be used as evidence against him.

Appellant's argument that the state was required to comply with the Implied Consent Statute, in order to use the test results as evidence, is without merit if the evidence is otherwise admissible. This statute (Code Ann. § 68-1625.1) does not apply to a criminal prosecution for murder. It deals only with the administrative sanction of driver license suspensions and has no bearing on the issues presented in this case.

More difficult of resolution is appellant's argument that the taking of his blood and the use of the test results as evidence against him denied appellant basic constitutional protections. Let us move now to a consideration of these important issues.

First, we note that the constitutional questions relate primarily to two areas of concern: (1) search and seizure; and (2) self-incrimination. All counsel in the case note in their briefs the decision of the United States Supreme Court in Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908). It is a leading case dealing with the taking of blood. In that case, the defendant was convicted in California for driving an automobile while

under the influence of intoxicating liquor. After his arrest, while the defendant was in the hospital receiving treatment for injuries suffered in the automobile accident, a blood sample was taken by a physician, at the direction of police authorities acting without a search warrant, over defendant's refusal to consent even though his counsel advised him to allow it. The test indicating defendant was intoxicated was admitted in evidence over defendant's objection at trial that the compulsory blood test and admission of the results in evidence violated defendant's right to due process of law under the Fourteenth Amendment, his privilege against self-incrimination under the Fifth Amendment, and his right against unreasonable search and seizure under the Fourth Amendment — applicable to the States through the Fourteenth Amendment. A divided U. S. Supreme Court rejected defendant's contentions and affirmed the conviction. The taking of the blood was considered to be an appropriate incident to his arrest and hence not an unreasonable search and seizure. Defendant's Fifth Amendment argument that he was compelled to give evidence against himself was rejected on the basis that the constitutional privilege against self-incrimination relates only to testimony or communicative evidence, not physical evidence.

Appellant acknowledges that Schmerber "would appear to reject any Fourth Amendment argument that the defendant in this case, Earnest Strong, was the subject of an illegal search and seizure." However, appellant's counsel argues that Schmerber is distinguishable because here there was no arrest and no probable cause for an arrest at the time defendant's blood was taken from him. The trial transcript discloses that Lt. Hunnicutt, of the Macon Police Department, was asked on cross examination if he had appellant "arrested for anything that night," and that he replied, "No sir, I think he stayed in the hospital that night. I usually try not to make a case against the person until I gather all the evidence and all the facts in the case and question all the witnesses." The officer also testified that the appellant was not arrested for DUI until after fifteen or so days following the accident when he received a report on the blood test. Counsel argues this testimony demands the conclusion that appellant was not under arrest, and also argues that since no probable cause existed for his arrest at the time his blood sample was obtained, an unreasonable search and seizure took place in contravention of appellant's Fourth Amendment protection.

Counsel for appellant overlooks the other evidence in this case, inter alia, that Chief Jackson and Officer Lowery, of the Gray Police Department, placed appellant under arrest at the scene of the accident, handcuffed him and tranferred his custody to the Macon Police Department so that he could be transported to the hospital after observing appellant's unlawful high speed driving all the way from Gray to Macon where his tragic journey ended. It is evident from the context of Lt. Hunnicutt's entire testimony in the trial of the case that the answers he gave on cross examination, referred to above, related simply to the fact that Lt. Hunnicutt made no formal charges against appellant at the hospital that first evening, and particularly did not charge appellant at that time with driving under the influence because he had not completed his investigation and did not then know the results of the blood test.

There is abundant evidence in the record establishing that appellant's liberty was restrained by the police officers involved after appellant crashed the vehicle he was driving. Restraint of one's liberty, no matter how slight, constitutes an arrest. *Clements v. State,* 226 Ga. 66 (2) (172 SE2d 600). The legal state of arrest is not dependent upon the filing of formal charges. The fact that the Macon Police Department investigating officer made no immediate formal charge against the appellant does not justify the conclusion that appellant had not been placed under arrest and was not considered to be in custody at the time the blood sample was removed from his body. Even if the defendant were not under technical arrest, there was plainly probable cause therefor. The evanescent nature of alcohol in the blood made it necessary to have a sample extracted to prevent a failure of justice from a certain disappearance of this evidence. Appellant was unconscious at the time the blood sample was removed and no physical harm resulted from this minor intrusion to obtain the sample. Blood samples are frequently needed by hospital personnel to render proper medical care and attention in traumatic injury cases to one who is unconscious. It was unnecessary under the circumstances of this case to require appointment of counsel for appellant before his blood sample was taken. The taking of appellant's blood sample was proper and compatible with constitutional safeguards. See Breithaupt v. Abrams, 352 U. S. 432 (77 SC 408, 1 LE2d 448); Schmerber v. California, 384 U. S. 757, supra; and, Cupp v. Murphy, 412 U. S. 291 (93 SC 2000, 36 LE2d 900), the latter case

holding that a search of a person may be conducted on probable cause when the evidence sought is likely to disappear.

There remains for decision appellant's contention that the use of the results of the blood test against him at the trial required him to give evidence against himself. Appellant was not compelled or forced to remove the incriminating blood. The removal of a substance from the body through a minor intrusion does not cause the person to be a witness against himself within the meaning of Fifth Amendment protection and similar provisions of Georgia law. *Aldrich v. State,* 220 Ga. 132 (137 SE2d 463) is distinguishable on its facts. See *Creamer v. State,* 229 Ga. 511 (192 SE2d 350); and *Allison v. State,* 129 Ga. App. 364 (199 SE2d 587).

The errors enumerated by appellant having been found to be without merit, the conviction and sentence in this case are hereby affirmed.

*Judgment affirmed. All the Justices concur, except Gunter and Ingram, JJ., who dissent.*

ARGUED SEPTEMBER 10, 1973 — DECIDED NOVEMBER 29, 1973 — REHEARING DENIED DECEMBER 17, 1973.

*Richard M. Nichols,* for appellant.

*Fred Hasty, District Attorney, Walker P. Johnson, Jr., Walter M. Matthews, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, Assistant Attorney General, B. Dean Grindle, Jr., Deputy Assistant Attorney General,* for appellee.

INGRAM, Justice, dissenting. I respectfully dissent to the judgment affirming the conviction in this case solely on the basis of the majority opinion's reliance on the holding of this court in *Creamer v. State,* 229 Ga. 511, 518 (192 SE2d 350) to decide that this defendant was not compelled to give evidence against himself. It should be perfectly obvious that an unconscious man is not in a position to protect his constitutional rights. The appellant did not even have the same right extended to a conscious person to take either a breath test or blood test or lose his driver's license. He was given no choice at all. If the law regards a choice important to a man who may be charged only with driving under the influence, or the loss of a license, it would seem even more important for a person who may be charged with murder to have such a choice.

But all this is minuscule compared to the use against the defendant of his own blood as evidence to convict him. I realize that in the federal courts and in many state courts the privilege against self-incrimination extends only to testimony and documents. (E. g.,

see Holt v. United States, 218 U. S. 245 (31 SC 2, 54 LE 1021); People v. Trujillo, 32 Cal. 2d 105 (194 P2d 681); State v. Sturtevant, 96 N. H. 99 (70 A2d 909); State v. Blair, 45 N. J. 43 (211 A2d 196); and Gouled v. United States, 255 U. S. 298 (41 SC 261, 65 LE 647). But whatever the related rule might be in other jurisdictions, I have always considered that Georiga was more jealous of the rights of its citizens than most others. Until this court decided the *Creamer* case, it has been fairly common knowledge in Georgia legal circles, acknowledged in courtroom and seminar "shoptalk" alike, that our law against self-incrimination was not so limited as to cover only testimony. Our statute (Code Ann. § 38-416) states unequivocally that no person shall be compelled to "give evidence" (not just testimony) against himself. Any trial lawyer knows that the word "evidence" includes more than testimony. The statute is too plain to be misunderstood.

I cannot conclude that the rule of stare decisis compels me to hold that it is *lawful* to take blood from an unconscious person and use it to convict him of murder over his objection, while it is *unlawful* to require the driver of a truck to drive onto scales to determine if the truck is overweight, as in *Aldrich v. State,* 220 Ga. 132 (137 SE2d 463). To distinguish the holding in the present case from *Aldrich* by observing that this defendant was not required to remove the blood himself is an insufficient distinction.

Finally, it must be noted that in *Creamer v. State,* 229 Ga. 511, supra, this court stated on motion for rehearing (p. 527) that "while the bullet may incriminate the defendant when removed, the question as to its safe removal is a distinct issue which in no wise incriminates him, . . ." Thus, the precise question of whether the bullet after removal could be used as evidence against Creamer in a subsequent trial was not faced or answered by this court. But it is a question which has been faced here and I dissent to the holding in this case which extends the *Creamer* decision to permit the use of "tainted" blood to convict. Settled Georgia law since 1866 leads me to a different conclusion from the majority.

I am authorized to state Mr. Justice Gunter joins in this dissent.