313 Ga. 99
FINAL COPY

S21G0370.  AWAD v. THE STATE.

COLVIN, Justice.

This Court has held that the right against compelled self-incrimination protected by Article I, Section I, Paragraph XVI of the Georgia Constitution of 1983 ("Paragraph XVI") prohibits the State from admitting into evidence both the results of a compelled state-administered breath test and a defendant's refusal to submit to a state-administered breath test.  See *Olevik v. State*, 302 Ga. 228, 228-229, 246 (2) (c) (iv) (806 SE2d 505) (2017); *Elliott v. State*, 305 Ga. 179, 179-180, 223 (IV) (E) (824 SE2d 265) (2019).  In the wake of this precedent, we granted certiorari to determine whether the scope of Paragraph XVI extends to another test sometimes administered in driving-under-the-influence cases, namely, a chemical test of urine.  Under the reasoning of *Olevik* and *Elliott*, we hold that the right against compelled self-incrimination protected by Paragraph XVI prohibits the State from admitting into evidence a

defendant's refusal to urinate into a collection container as directed by the State for purposes of providing a urine sample for chemical testing.

1. On November 13, 2018, a police officer found Omar Awad sleeping in the driver's seat of a vehicle that was stopped in the middle of an intersection. The officer arrested Awad, read him the relevant implied-consent notice,[1] and requested that he provide a

---

[1] Although the record does not contain the language of the implied-consent notice that the officer read to Awad, the State proffered at the motion-to-suppress hearing that the officer read Awad "the appropriate implied consent warning." At the time of Awad's arrest, the implied-consent-notice statute required an officer to read the following language to a person like Awad, who was over the age of 21:

> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?

urine sample in a collection container for chemical testing.[2]  Awad refused.

The State charged Awad with driving under the influence in violation of OCGA § 40-6-391 (a) (2), improper stopping in violation of OCGA § 40-6-203 (a) (1) (C), and failure to wear a safety belt in violation of OCGA § 40-8-76.1.  Before trial, Awad moved to suppress his refusal to submit to the urine test under Paragraph XVI.  Relying on this Court's decision in *Elliott*, the trial court granted the motion. The State immediately appealed, see OCGA § 5-7-1 (a) (4), and the Court of Appeals reversed.  See *State v. Awad*, 357 Ga. App. 255, 259 (2) (850 SE2d 454) (2020).  We granted Awad's petition for certiorari to determine whether the trial court erred in concluding that the State was not permitted to introduce into evidence Awad's refusal to provide a urine sample on the ground that admitting such evidence

---

OCGA § 40-5-67.1 (b) (2) (2016).

[2] Although it was stipulated below that the police officer asked Awad to submit to a urine test, the record did not reveal the details of how Awad's urine would have been collected.  At oral argument before this Court, however, the State conceded, and Awad agreed, that the collection method at issue here would have involved Awad urinating into a container, rather than some alternative method, such as catheterization.

3

would violate his right against compelled self-incrimination provided by Paragraph XVI of the Georgia Constitution.

2. Paragraph XVI provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. Although the language of Paragraph XVI references only "testimony," we concluded in *Olevik* that the provision's "long history of interpretation" showed that its scope was not "limited to evidence of a testimonial or communicative nature." *Olevik*, 302 Ga. at 235 (2) (c). In addition to prohibiting the State from compelling a defendant to give self-incriminating testimony, we explained, "Paragraph XVI prohibits compelling a suspect to perform an act that itself generates incriminating evidence." Id. at 243 (2) (c) (iii).[3]

Applying this principle, *Olevik* held that "Paragraph XVI protects against compelled [deep lung] breath tests and affords

---

[3] However, Paragraph XVI "does not prohibit compelling a suspect to be present so that another person may perform an act generating such evidence." *Olevik*, 302 Ga. at 243 (2) (c) (iii). Nor does it prevent "a suspect [from] consent[ing] to take actions that Paragraph XVI would prevent the State from compelling." Id.

4

individuals a constitutional right to refuse testing." *Olevik*, 302 Ga. at 252 (3) (b). This was so, we explained, because "for the State to be able to test an individual's breath for alcohol content, it is *required* that the defendant *cooperate* by *performing an act*," namely, by blowing "strong[ly]," "deeply," and "unnaturally" for "several seconds in order to produce an adequate sample." Id. at 243-244 (2) (c) (iii) (emphasis in original). Although exhaling breath generally occurs "involuntarily and automatically," we noted, "[s]ustained strong blowing into a machine for several seconds requires a suspect to breathe unnaturally for the purpose of generating evidence against himself." Id. at 244 (2) (c) (iii). Accordingly, if the State compels a defendant to submit to a breath test, Paragraph XVI prohibits the State from admitting into evidence any incriminating test results.[4] See id. at 252 (3) (b) (affirming the denial of a motion to suppress the defendant's breath-

---

[4] "[W]hether a defendant is *compelled* to provide self-incriminating evidence in violation of Paragraph XVI is determined under the totality of the circumstances" in the same manner as a court determines whether a defendant has voluntarily consented for purposes of constitutional due process. *Olevik*, 302 Ga. at 251 (3) (b) (emphasis supplied).

5

test results because, although Paragraph XVI protects against compelled breath tests, the State had not compelled the defendant to submit to the test).

Whereas *Olevik* addressed when a court should suppress compelled breath-test results, *Elliott* considered when a defendant's refusal to submit to such a test should be suppressed. See *Olevik*, 302 Ga. at 229; *Elliott*, 305 Ga. at 181 (I). Declining the State's invitation to overrule *Olevik*, we reaffirmed *Olevik*'s holding that Paragraph XVI affords a defendant a right not to be compelled to submit to a state-administered breath test and a right to refuse such a test. See *Elliott*, 305 Ga. at 180, 209 (IV). We then reviewed the relevant history and case law leading up to and immediately following adoption of the self-incrimination provision in the 1877 Georgia Constitution to determine what consequences flowed from a defendant's assertion of the right to refuse breath testing. See id. at 209-210 (IV). Based on the historical record and decisional law, we concluded that the self-incrimination provision adopted in 1877 "prohibited admission of a defendant's refusal to speak or act as

6

evidence against him," and that no subsequent developments altered the meaning of the self-incrimination provision that had been incorporated without material change into Paragraph XVI of the 1983 Constitution. Id. at 218-221 (IV) (C), (D). Accordingly, we held that "Paragraph XVI precludes admission of evidence that a suspect refused to consent to a breath test." Id. at 223 (IV) (E).

The State has the burden of proving that evidence challenged in a motion to suppress is admissible. See *Kennebrew v. State*, 304 Ga. 406, 409 (1) (819 SE2d 37) (2018) (holding that, on a motion to suppress evidence obtained from a warrantless search, the State has the burden of showing that an exception to the warrant requirement applies); *State v. Hinton*, 309 Ga. 457, 457 (847 SE2d 188) (2020) (noting that, on a motion to suppress a custodial statement, "[t]he State bears the burden of establishing by a preponderance of the evidence that a defendant's custodial statement was voluntary"); *Melton v. State*, 354 Ga. App. 828, 828, 830-831 (841 SE2d 481) (2020) (vacating the denial of a motion to suppress breath-test results and remanding for the trial court to determine whether the

7

State had carried its burden of showing that the defendant had voluntarily consented to the breath test). Thus, as made clear in *Olevik*, the Georgia constitutional right against compelled self-incrimination requires a trial court to grant a motion to suppress incriminating results from a state-administered chemical test unless the State proves that (1) the defendant was not required to perform an act to generate the test sample, or (2) the defendant was not compelled to submit to the test. See *Olevik*, 302 Ga. at 243-244 (2) (c) (iii), 252 (3) (b). Under *Elliott*, whether Paragraph XVI requires a court to grant a motion to suppress a defendant's refusal to submit to a state-administered chemical test turns on whether the defendant would have been required to perform an act to generate the test sample. See *Elliott*, 305 Ga. at 179-180, 209 (IV), 223 (IV) (E). Unless the State proves that submitting to the state-administered chemical test would not have required the defendant to perform an act to generate the test sample, Paragraph XVI requires a court to grant a motion to suppress evidence that the defendant refused to submit to the test. See id. at 223 (IV) (E).

8

3. Under *Olevik* and *Elliott*, the right against compelled self-incrimination protected by Paragraph XVI prohibits the State from admitting into evidence a defendant's refusal to submit to a urine test when doing so would require a defendant to urinate into a collection container to generate a sample for chemical testing. This collection method necessarily requires a defendant to cooperate with the State by performing an act that generates self-incriminating evidence. Specifically, a defendant must urinate into a container, at the time and in the manner directed by the State, to ensure that the State can obtain a usable test sample for chemical analysis. Although urination, like breathing, is a natural bodily function, "the State is not merely collecting [urine] expelled in a natural manner" when it asks a defendant to produce an adequate amount of urine in a collection container at a specific time. *Olevik*, 302 Ga. 244 (2) (c) (iii). Instead, the State is asking the defendant to affirmatively give the State evidence from the defendant's body in a particular manner that is neither natural nor automatic. Accordingly, under *Olevik* and *Elliott*, Paragraph XVI affords a defendant a right to refuse to

9

submit to such a test and a right to suppress evidence of the defendant's refusal. See *Olevik*, 302 Ga. at 243-244 (2) (c) (iii); *Elliott*, 305 Ga. at 179-180, 209 (IV), 223 (IV) (E). Here, because Awad had a right to refuse the State's request that he provide a urine sample in a collection container, the trial court properly granted his motion to suppress evidence of his refusal to submit to the test.[5]

4. Challenging this conclusion, the State argues that our

---

[5] The State compares the urine test at issue here to other tests involving natural bodily substances, such as DNA or blood, which we have held do not implicate the right against compelled self-incrimination. However, unlike a urine test that requires a defendant to intentionally produce urine in a particular manner suitable for chemical analysis, obtaining a DNA or blood sample generally does not require a defendant to affirmatively produce evidence from himself. See *Quarterman v. State*, 282 Ga. 383, 386 (4) (651 SE2d 32) (2007) (holding that a statute requiring incarcerated felons to provide a DNA sample "does not force a convicted felon to remove incriminating evidence but only to submit his or her body for the purpose of having the evidence removed"); *Strong v. State*, 231 Ga. 514, 514, 518-519 (202 SE2d 428) (1973) (holding that taking blood from an unconscious defendant did not violate the right against compelled self-incrimination because the defendant was not "forced to remove the incriminating blood" from himself), overruled in part on other grounds by *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015). For the same reason, the urine test at issue here is not analogous to other cases the State cites in which a defendant was only required to be present for the State to collect evidence. See, e.g., *Creamer v. State*, 229 Ga. 511, 515, 517-518 (3) (192 SE2d 350) (1972) (concluding that the removal of a bullet from the defendant's body did not violate his right against compelled self-incrimination).

10

decision in *Green v. State*, 260 Ga. 625 (398 SE2d 360) (1990) — a case involving a probationer — established that the State's obtaining a urine sample does not implicate the right against compelled self-incrimination because providing a urine sample does not require an act on the part of the defendant. A careful reading of *Green,* however, shows that our decision turned on whether the probationer was *compelled* to provide a urine sample, not whether he had *performed an act* in producing the urine sample. Thus, *Green* is not inconsistent with our conclusion in Division 3.

In *Green,* we rejected the probationer's argument that the State's *use* of his urine sample as evidence against him had violated his Paragraph XVI right against compelled self-incrimination. See *Green,* 260 Ga. at 626-627 (2). We noted that the probationer had been required to provide a urine sample "as a condition of his probation" and quoted that condition as stating that the "[p]robationer shall, from time to time upon oral or written request by any . . . state law enforcement officer, produce a . . . urine . . . specimen for [chemical] analysis." Id. at 625 & n.1. Then, after

11

noting the general rule that "[y]ou cannot *force* a defendant to act, but you can, under proper circumstances, *produce* evidence from his person," id. at 627 (2) (citation and punctuation omitted; emphasis supplied), we held as follows:

> We adopt, with some modification, the holding of the Court of Appeals in *Robinson v. State*, 180 Ga. App. 43 (3) (348 SE2d 662) (1986), reversed on other grounds, 256 Ga. 564 (350 SE2d 464) (1986): *the use of a substance naturally excreted by the human body does not violate a defendant's right against self-incrimination under the Georgia Constitution.* Thus, the use of appellant's urine sample did not violate appellant's constitutionally-protected right against self-incrimination.

Id. (emphasis supplied). In the cited portion of *Robinson*, the Court of Appeals had affirmed a trial court's denial of a motion to suppress results from a urine test obtained pursuant to a search warrant. See *Robinson*, 180 Ga. App. at 50-51 (3). *Robinson* reasoned that "[t]here [was] nothing in the record to show that appellant was '*forced*' to produce a urine sample," and "the *procurement* of substances which are naturally produced by the body does not violate a defendant's right against self-incrimination under the Constitution of Georgia." Id. (emphasis supplied).

12

Standing alone, *Green*'s statement that "the use of a substance naturally excreted by the human body does not violate a defendant's right against self-incrimination" might be read as a holding either that a person need not *perform an act* to provide a urine sample because urination is a natural bodily function or that the use of urine which has been naturally produced *without compulsion* does not implicate Paragraph XVI. *Green,* 260 Ga. at 627 (2). In context, however, we conclude that only the latter interpretation is consistent with the opinion as a whole. We must consider the factual context of *Green* and the authority on which it relied to understand the scope and nature of its holding. See *Undisclosed LLC v. State*, 302 Ga. 418, 433 (4) (b) (807 SE2d 393) (2017). Three features of *Green* inform our interpretation of the decision.

First, *Green* did not identify the method used to collect the probationer's urine, much less purport to analyze whether the collection method required an act on the part of the defendant. See *Olevik*, 302 Ga. at 243 (2) (c) (iii) (noting that determining whether a defendant must perform an act to generate evidence "depends on

13

the details of the [particular] test"). Second, *Green* relied heavily on *Robinson* — a case concerning whether *force* had been used when a defendant submitted to the execution of a search warrant and in doing so provided a urine sample. See *Green*, 260 Ga. at 627 (2); *Robinson*, 180 Ga. App. at 50-51 (3). Finally, *Green* emphasized that providing urine samples was a condition of the probationer's probation and noted that the probationer had abided by that condition. See *Green*, 260 Ga. at 625 & n.1. *Green* did not state that the probationer was compelled to provide a urine sample, and we will not infer such compulsion from *Green*'s silence. See id. at 625, 627 (2); see also *Olevik*, 302 Ga. at 252 (3) (b) (noting that a defendant's right against compelled self-incrimination is not violated if the defendant voluntarily submits to a state-administered test without being compelled to do so).[6] Indeed, probation conditions like the one discussed in *Green* are sometimes the result of consensual plea bargains or waivers of constitutional rights. See

---

[6] The State does not contend that Awad consented to urine tests.

14

*Fox v. State*, 272 Ga. 163, 164 (1) (527 SE2d 847) (2000).[7]

In context, then, *Green* held that "the use of a substance naturally excreted by the human body [such as urine] does not violate a defendant's right against self-incrimination" *unless* the defendant was *compelled* to perform an act to produce the substance. *Green,* 260 Ga. at 627 (2); see also *Olevik,* 302 Ga. at 243-244 (2) (c) (iii) (explaining *Green* and *Robinson* in terms of merely "collecting" a urine sample and "procurement" of a urine sample without "force[ ]") (citation and punctuation omitted); *Kehinde v. State,* 236 Ga. App. 400, 401 (512 SE2d 311) (1999) (describing *Green* as involving "submit[ting] to the collection of [a urine sample] from [the probationer's] person"), disapproved of on other grounds by *State v. Turnquest,* 305 Ga. 758 (827 SE2d 865) (2019). Because *Green* did not address whether a defendant must *perform an act* to produce a

---

[7] We note that probation conditions authorizing searches do not *always* constitute valid waivers of Fourth Amendment rights. See *Fox,* 272 Ga. at 164-165 (1) (holding that the defendant had not validly waived his Fourth Amendment rights where he first learned that a waiver of those rights was a condition of his probation outside the presence of the court or his attorney after being sentenced).

urine sample for chemical testing, but instead confined its analysis to Paragraph XVI's compulsion element, its holding does not control whether urinating into a collection container at a time and in a manner directed by the State for purposes of chemical testing constitutes an affirmative act under *Olevik* and *Elliott*. Properly understood, then, *Green* does not conflict with our conclusion in Division 3 that the urine test that Awad refused would have involved performing an affirmative act to generate self-incriminating evidence.[8]

---

[8] The State argues that, even if compelling a defendant to urinate into a container requires a defendant to perform an act to generate self-incriminating evidence in violation of Paragraph XVI, commenting on a defendant's refusal to submit to testing does not necessarily implicate the defendant's rights under Paragraph XVI. This is so, the State contends, because neither Georgia's implied-consent-notice statute nor any other state statute designates a specific form of collection, and some collection methods, such as catheterization, would not require the defendant to perform an act. Setting aside the parties' agreement here that the officer asked Awad to provide a urine sample in a collection container, it is difficult to see how this argument helps the State because a defendant who refuses to provide a urine sample before an officer has specified a particular collection method has refused to comply with *any* collection method. Because, as discussed in Division 2, the State has the burden of establishing that evidence of the defendant's refusal is admissible, it must show that the collection method that the defendant refused would not have required him to perform an act to generate self-incriminating evidence. Evidence that the defendant's refusal concerned several collection methods, some of which implicate his rights under Paragraph XVI and some of which do not, fails to carry that burden.

16

5. We hold that, under *Olevik*, the right against compelled self-incrimination protected by Paragraph XVI affords a defendant the right to refuse to give the State a urine sample in a collection container, as directed by the State, for purposes of chemical testing. We further hold that, under *Elliott*, the State may not admit in a criminal trial evidence that the defendant refused to submit to such a test. Having concluded that the trial court properly suppressed evidence of Awad's refusal to submit to a urine test, we reverse the Court of Appeals' decision to the contrary, *Awad*, 357 Ga. App. at 259, and remand for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

S21G0370. AWAD v. THE STATE.

COLVIN, Justice, concurring.

In the majority opinion, I have faithfully applied this Court's recent precedent interpreting Georgia's constitutional right against

17

compelled self-incrimination because the State argued only that its position was consistent with that precedent and not that the Court should reconsider it. See *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017); *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019). The State is wrong as the logic underlying the above precedent compels the conclusion reached in today's majority opinion. While I have grave concerns about the interpretation of our Constitution in *Olevik* and *Elliott*, that issue is not squarely before the Court today.

Decided January 19, 2022.

Certiorari to the Court of Appeals of Georgia — 357 Ga. App. 255.

*D. Benjamin Sessions*, for appellant.

*Herbert M. Poston, Jr., District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.

*Kimberly A. Dymecki, Greg A. Willis, Hunter J. Rodgers, Omeeka P. Loggins, Solicitor-General, Robert W. Smith, Jr., Gilbert A. Crosby*, amici curiae.

18